Our next case is Monroe v. Bowman, appeal number 23-3371. Okay, Ms. Hanson, whenever you're ready. Good morning, may it please the court, I'm Assistant Attorney General Christina Hanson on behalf of defendants appellants LaToya Hughes, Steven Bowman, and Melvin Hinton who were sued in their official capacities as officials of the Illinois Department of Corrections. This court should vacate the January, April, and May 2023 orders which the district court deemed to be enforcement orders. Each order was an abuse of discretion because the court did not have the inherent authority to enforce the preliminary injunction that was entered in February 2022. It had already expired by operation of the PLRA. Does Rule 60A have any application here? It doesn't, Your Honor, because Rule 60A governs mistakes. But it just seems to me like everybody made a mistake here. Doesn't it? I mean, it just seems to me a little weird that the state would continue to litigate for a year after the preliminary injunction expired. In other words, there was nothing to litigate according to the state's position, I think. The preliminary injunction under the PLRA expired 90 days, so that would have been sometime in April. But yet we have litigation in the district court for a year for no reason at all. Well, there was a reason, Your Honor. There was no final judgment entered in the case. And so the defendants proceeded with deference to the district court's process because there was no final judgment entered in the case. As far as the defendants were concerned, the evidence was still open. Just as in August 2021, when the court took evidence and then issued a preliminary injunction and sort of kept the record open until February 22nd. But is the state's position that the district court kept the record open, but the district court didn't have the authority to do anything? I'm just confused. Is it the state's position that the district court had the authority to advise the state without entering any enforcement orders, without entering contempt, so you're just going to the district judge for general advice? Well, we weren't going to the district court for general advice. We were continuing on this process under the presumption that a final judgment was going to be entered, that final relief was going to be entered. But it couldn't do anything other than enter a final judgment? You see where I'm getting at here? Well, the evidence at that point was still open. That was defendant's understanding is that the evidence at that point was still open. So what authority did the district judge have after the 90 days and the expiration of the preliminary injunction? What authority did the district judge have to do anything other than enter final judgment? The case was still ongoing, and so the district court could have still taken evidence or... For what purpose? It couldn't have entered enforcement orders and it couldn't have entered a contempt finding. But it could have reached a final decision in the case. Couldn't it also have entered another preliminary injunction? If it had taken evidence and consistent with the PLRA found that there was still an ongoing violation of federal rights and that the injunction that it was going to enter met the needs, narrowness, and intrusiveness findings, then yes, it could have entered another preliminary injunction. I guess I'll ask a similar question, but it is sort of the mystery as the case comes to us and that is, why did you all wait so long to raise these problems until your, I think it was May of 23, under your theory, more than a year after the preliminary injunction had expired? We had raised that there was no final relief entered in the case after the contempt motion was filed. And like I said, the defendants kept on their path because they had already committed to implementing and continuing on the relief that had been awarded. The department had changed its policy. At the risk of putting words in your mouth, the district judge has ongoing jurisdiction or would have ongoing jurisdiction, and if we send this back, all these substantive issues are going to be in front of Judge Rosenstengel again, right? You don't have any particular desire to go to war with her at any point over the last several years, right? That's correct. And the issues aren't going away, right? The issues . . . The substantive issues about care for gender dysphoric inmates are not going away. If you win on this appeal, the case isn't over. It's back in front of Judge Rosenstengel and she has to take a fresh look at ongoing relief, right? Yes. Okay. And we think that's the appropriate, we think that's the appropriate course here because that February 20, 22nd order was not a final judgment in this case. And then . . . Exactly what do you think will, will, will happen? I mean, if we decide, and it sure looks like this is the case, that only preliminary injunctive relief was granted and, you know, and it had expired quite a while back, what do you think will happen? As we requested in the district court, it would then go to a new hearing. There has been quite a bit of change in the record from the time that the court first considered evidence in August 21 until today. And so the court would have to take a fresh look at the evidence and find, it would essentially be a new hearing. It would have to find an ongoing constitutional violation as well as tailor the relief to the PLRA's requirements. In other words, if we were to reverse on the finding of preliminary versus permanent injunction, the district court now would have the evidence in front of it as of today to determine whether or not the state has been deliberately indifferent. If we, if we deal with the deliberate indifference argument and we say it was a permanent injunction as of February 2022, we can only look to what the state did as of August or so at the time of the hearing to determine whether or not the state was deliberately indifferent. Is that right? If, if the, if the judgment is retroactive to February 2022, then presumably, yeah, the evidence would have closed in February 2022 and that would be the record. We would have to determine the deliberate indifference test on it. I assume the state's position is the record today would look far different than it did in February 2022 and it would be an easier decision for the district court to determine whether or not the state has been deliberately indifferent. Yes. And your point is you, you don't think we should reach that. We should leave that to the district court as of the evidence today. I'm not sure I understand your question. We do agree that it should go back down for an evidentiary hearing and a determination of deliberate indifference. Based on the evidence today. Yes. Yeah. That is. Yes. Because it would be ongoing injunctive relief. And so it would require an ongoing violation of federal law. Yeah. And so for the same reason, the enforcement orders would also have to, because the preliminary injunction would have expired any orders that were in service of the preliminary injunction or depended on the preliminary injunction would also go by the wayside. So those January, April, and May, 2023 orders would also need to be vacated as well as there was a finding of contempt in the November, 2023 order that would also need to be vacated. I don't understand how that, how we have jurisdiction over the contempt finding. To the extent that it's, well, to the extent that it was based on, to the extent that there was a finding based on expired and on the, that goes back to the expired injunction, there would be no jurisdiction over it and it would just, it would just, well, there's no appellate jurisdiction over the district court's finding of contempt without any sanction. That's my problem with that under the Motorola case. Even, okay, then the enforcement orders would certainly have to be vacated. Wow. Can I ask you a question about the constitutional floor here? The state seems to suggest or seems to agree that the WPATH standard is the, is the standard, is the constitutional floor. Does the court have to accept that for the purposes of the Eighth Amendment? No, and we would dispute that it's the constitutional floor, that certainly the, that the department has, the department's policy changes have been informed by the WPATH standards, but we would dispute that that's the constitutional floor. But I take it you have not come forward with any evidence of any other standards of care, have you? Not, the defendants did not present sort of a, what this, they did not present a standard of care. Right. I mean, if you don't like WPATH standards, you haven't come forward with contrary evidence at this point. I understand why you might not want to, but that's . . . Yeah, and we have presented that the policies that the department implemented would meet the constitutional floor, and they, and again, those standards were informed by the WPATH standards. Do you think that everything since the 90 days expired never happened, so to speak, is it . . . In other words, you, will you just stand on whatever this record is? You know, go back and say to the judge, um, well, we accept everything that's happened thus far, but we have more to add. I am flummoxed about how you're dealing with all of this. I'm not quite sure. Are you asking if the evidence from August 2021 would still be in the record? The evidence that supported the . . . I mean, you know, is there even a record, so to speak? I mean, the preliminary injunction died, right? It did, and so the findings that went with it would have died with it. Exactly. To the extent that the parties might sort of . . . I'm not sure that evidence can't be put towards . . . can't be cited back in a future hearing, but certainly there would have to be new evidence, fresh evidence, demonstrating deliberate indifference, and if the court got past that, what relief would be appropriate? And that's consistent with the way that . . . with the plain language of PLRA, which provides that a preliminary injunction expires after 90 days unless the requisite findings, the PLRA findings are made and a final . . . and the order is made final, and here no final order was ever entered. The February 2022 injunction, like the August 2021 injunction before it, was a preliminary injunction, and so it expired by operation of law. And lastly, we would argue that if the court did find that injunction to be permanent and reach the merits, we would argue that there is no . . . that there was no . . . even back in August 2021, there was not evidence of deliberate indifference in this case because it requires a conscious disregard of plaintiff's serious medical needs. And here, as the district court observed, plaintiffs demonstrated that they were serious about making changes . . . about making policy changes and providing care. The district court found that they had contracted with experts to revise their policies, that they had implemented the two-committee system that the court had ordered, that they had assigned the department's deputy chief of health services to oversee care for gender dysphoria. They had . . . they had changed the policy so that medical directors could prescribe hormones. They had consulted and contracted with an expert endocrinologist to facilitate hormone therapy and make sure that it met the standards, that it was appropriate care. They had implemented WPATH training for all of their medical and mental health providers. They had entered into a partnership with the University of Illinois at Chicago's Transgender Health, started a clinic to help with hormone therapy cases that were more complex and to have the clinic available for cases . . . for guidance and also for cases that were more complex. They had established a relationship with WPATH-certified surgeon, Dr. Schechter, to provide a path for gender-affirming surgeries. So while progress wasn't made as quickly as the district court would have liked, and certainly in this process of overhauling a system of care that plaintiff . . . that defendant's experts talked about what was binary in every way, certainly obstacles arose, but at every step defendants here were taking steps to provide adequate care. And so for that reason, we would argue in the alternative that even as of February 2022, there was no . . . the record did not . . . it would have been clearly erroneous to find that there was deliberate indifference. If there's no further questions, I'll reserve my time for rebuttal. Okay. Ms. Bennett. Good morning. May it please the Court. My name is Camille Bennett. I work for the Illinois ACLU and I'm one of the attorneys representing the plaintiff class here. The cusp of this appeal revolves around the February 2022 opinion and order entered by the district court, which the district court said after defendants filed their motion to vacate in May of 2023 in its November 2023 memorandum had been a mislabeled permanent injunction. In the February . . . Are there other cases where a court has retroactively turned a preliminary injunction into a permanent injunction? No, but that is not what happened here. The February . . . We say many, many times that parties and counsel and other judges are entitled to take district judges or other federal judges at their word. The judge said she was issuing a preliminary injunction. Well, when the judge . . . when this issue is finally elevated to the judge after over a year of the defendants continuing to act as if the injunction was ongoing, was permanent, what she said in her November . . . I thought they understood that it was . . . Was that it was a mistake? They acted as if it was ongoing, not that it was permanent. Well . . . There is no final judgment back in February of 22, is there? There is no final judgment entered in the document. On the other hand, Rule 58 provides that one now gets automatic . . . Have you ever seen Rule 58 final injunction or final judgment entered on the basis of a document labeled preliminary injunction? No, Your Honor. Neither have I. I've never heard of it. No. It's a little odd what we're doing here, but this is . . . you seem to be asking us to go where no court has gone before. Well, the issue here is that what the defendants have been asking the court to do is completely disregard what the district court said it had done in November . . . Why didn't you ask the district judge to fix it? That would have been so easy. If the district judge meant permanent and said preliminary, why didn't you go to the judge and say, Judge, you made a mistake, you meant permanent, and she would have corrected it within the 90 days and that would be it. Look, with the benefit of hindsight, obviously, we wish that we had done that, but what was going on for that fifteen months between February of 2022 and May of 2023 was entirely consistent with our understanding that a permanent injunction had been entered. Why should we not just send this back to the district court for a hearing now to determine whether or not an injunction is warranted? It seems to me that the state has said they've made consistent progress since February of 2022 in the treatment of gender dysphoria. Why should we not send this back to the district court and say the injunction had expired, it was preliminary, that's what you said, and the district judge should determine now again whether there's any reason for injunctive relief. If the plaintiffs continue to pursue a class deliberate indifference charge. There is no question here that this is a class that needs class-wide relief and continues to need class-wide relief. Well, maybe. But two answers to your question. First of all, the defendants have the right at this point to ask for the termination of the February 2022 injunction under the Prison Litigation Reform Act. But we have to treat it as permanent first. That would be correct, and then they would need to move. They had the opportunity to move in February of 2024. But why should we put the burden on them? Because, in essence, this rewards the defendants for over a year of sandbagging. No, no, no. Wait a minute. Wait a minute. There's two parties here. The plaintiff and the defendant, right? And we do this all the time. We don't waiver. Your argument would be whenever we find waiver, we're rewarding a defendant for failing to notify the plaintiff that they didn't make a certain argument. The defendant has no reason. There's absolutely no reason for the defendant to go to the court and say, oh, judge, wait a minute. We think you meant this to be permanent, but it actually expires in 90 days, so you should fix it. That's your responsibility. They would be crazy to do something like that, and you're standing here saying that's what they should have done. The order was mislabeled. No, no, no, no, no, no. No one really paid any attention to that. We really did the mislabeling. Counsel. Counsel. Hold on. Judge Rovner. Judge Rovner's trying to ask you a question. It would help if you please listen to our questions. I know this is, you know, fraught with nerves and worry, but here's our situation. These are not clerical errors. I mean, you just can't possibly say these are clerical errors. This is what we have. We have the February 2022 order that repeatedly stated it was preliminary injunctive relief. It never used the term permanent injunction. It set forth the standard that is appropriate to preliminary relief rather than permanent relief. It cited to cases that address preliminary injunctions. The court did not issue a judgment following the order as it would be proper if it were a permanent injunction, and the court continued for like more than a year, certainly, to refer to that injunction as a preliminary injunction, and it grouped it collectively with the other preliminary injunctions in the numerous orders. Numerous orders have followed. I mean, what evidence is there prior to the court saying, oh, my goodness, I have made an error here. That permanent relief was originally ordered. Is there any such evidence? There is, and the evidence is that the February 2022 opinion, which supports the order, repeatedly says that it is making a merits finding of constitutional violation. If I could read just a short paragraph from the February 2022 opinion. Plaintiffs' 2021 trial testimony underscored the irreparable harm that they have experienced and continue to suffer from anxiety, depression, suicidal ignition, and suicide attempts and self-mutilation due to defendants' failure to provide even minimally adequate treatment of their gender dysphoria. Monetary damages cannot compensate for these harms. The balance of harms and the public interest continue to weigh heavily in favor of granting injunctive relief, and the trial evidence and supplemental findings demonstrate that constitutional violations persist. That's at A65. On A66 and A70, in the same opinion, the court repeated that it was making a merits finding, a merits finding of constitutional violation, not a finding of likelihood of success on that claim. And if you line up the standards for a preliminary injunction and a permanent injunction next to each other, what you will see is that they are almost identical. They tend to be ordered in slightly different orders. But the one that is different for a preliminary injunction and a permanent injunction is either likelihood of success on the merits of the claim for the preliminary injunction or an actual finding for the plaintiff on the claim, as was made here in the February 2022 order. That is why the court believed it had entered an ongoing injunction. That is why we believed the court had entered an ongoing injunction. And that is why it's very puzzling that the defendants didn't challenge that, which is the finding of deliberate indifference back when it was made in February 2022, rather than proceeding for 15 months, providing documents to the monitors who had been appointed for the remedial phase of the case and participating in status conferences and responding substantively to our motion for contempt. They did not say, we can't be held in contempt in November of 2022 because we're operating under an order that's expired. They said, well, we're trying to comply with the order, and you shouldn't hold us in contempt. So this course of conduct showed, at least until May 2023, when the district court was about to hold them in contempt and warn them that she was about to do this, that there was a common understanding, and it was centered on the merits finding of the February 2022 order. The defendants have never acknowledged this conduct, and they don't explain or actually engage with the reasoning of the district court in the November 2023 order. And they're asking this court to ignore its own precept, stated in a case that they themselves cite, which is United States v. Daniels, that, quote, we believe our judges are honest. The judge in November 2023 honestly said that she had made a mistake, that the labeling of the injunction as a preliminary injunction was an error, and that she had made a mistake, indeed, in citing the standard for preliminary injunctive relief in a context where she believed she was doing a preliminary injunction. I don't doubt Judge Rosenstenkel's honesty in saying she made a mistake. The question is what's available to remedy that mistake. We don't get to rewrite history here. But history is the substance of the order itself, and that was a permanent injunctive order with a merits finding. And the defendants, in your view, should have understood that in deciding whether to appeal then. If they had come to us saying this is really a permanent injunction, Your Honor, we'd say, are you kidding? It's called a preliminary injunction. What are you talking about? And it's going to be moot before we're able to hear the argument and issue an opinion. If the defendants had come in February or March of 2022 and said we need to appeal this injunction, the problem would have quickly been revealed because it would have been evidence to everyone that there was an error in labeling, which was always there. It was transparently there. Why was there litigation? Not just labeling. It's all the things that we mentioned. It's the cases cited. It's just everything. It isn't labeling. This is not a clerical error. It is a clerical error within the context of the whole history of the case. There was a preliminary injunction hearing in this case in August of 2019. The parties prepared for trial over the course of two years. And then in August 2021, it came to trial. And the order that was issued in February 2022 after post-trial briefing and after the post-trial order that everyone had been waiting for, that the judge had said she intended to enter, and that was simply, in this case, mislabeled. Can I ask you a question? Why was the defendant's litigation strategy here not perfectly reasonable? In other words, as explained, preliminary injunction is entered in February of 2022. The state has an interest. Clearly, the state is not disinterested here in treating gender dysphoria. It's not the issue that we're here on. It's not as if the state is saying we're not going to recognize this as a serious medical condition or we're not going to comply with the WPATH standards. They're trying to. Whether they've done enough or not is a separate question, but they're trying to. So they litigate in the district court and are telling the district court, we think we're doing enough. The enforcement orders are entered, and the state is litigating towards a final judgment and trying to comply with the enforcement orders. It's only when the plaintiffs move for contempt that the defendants then say, wait, there's no authority to issue a contempt order because it's a preliminary injunction that has expired. They did not say that in their reply in December 2022 to our motion for contempt. That didn't happen until May of 2023 when the judge had warned them that, based on their lagging compliance with the orders, that she was considering holding them in contempt. So there's a six-month gap. But why isn't that reasonable for a state? We're talking about a state that's litigating with the plaintiffs, and the state's position is we are trying to comply with the WPAS standards in a very complex and difficult environment. We don't want to take the position in court that we're not going to treat gender dysphoria. We don't want to do that. And it's only when contempt is said, well, you're going to be held in contempt, that the state says, wait a minute, now you've gone too far. You've taken a step too far, and you don't have the authority to hold us in contempt because there's no permanent injunction. At no point did they say to the district court, you don't have the power to order us to do the reporting, to supply documents to the monitors. The monitors were tasked with evaluating compliance with the order. But you're not answering my question. That is a reasonable litigation strategy for a state. It may not be a reasonable litigation strategy for an individual defendant or an individual plaintiff. A state is different. Between, I mean, first of all, whether the defendants, we would contest whether the defendants were actually actively trying to comply absent an order of the court that was hanging over them. What the court found in February of 2022, and it's clearly reflected not just in that opinion, but in a preceding opinion at DACA 331, was that between the time of the preliminary injunction hearing and the August 2021 trial, the state had done really very little. That in terms of one of the critical components for management of gender dysphoria, which was hormone treatment, they were no better. Things were no better than they had been in August of 2019. And the expert professor of endocrinology who testified then testified again that things for at least two of the named plaintiffs were even worse. There had been no change. The state had promised to create a path for surgery. As of August 2021, no one was scheduled for surgery. They were just contracted. Now there are people scheduled for surgery. So without the, I'm sorry. Now there are people scheduled for surgery. There have been a few. Yes, there have been a few. But we have a lot of cases against the state at the Illinois ACLU, and I will tell you that they simply do not, as a matter of practice, turn over documents. I think that's an argument for another. I think that's another argument for another time. Thank you, Ms. Bennett. Okay, Ms. Hanson, do you have anything you'd like to add? Just close this. For the reasons that the court mentioned as well, the state, the defendants, the February 22, the February 2022 order was a preliminary injunction. A preliminary injunction was entered, and defendants believed it to be a preliminary injunction and proceeded accordingly. For those reasons . . . Well, I find that hard to take at face value. What are you going to say if we send this back and Judge Rosenstengel asks, what were you doing for that year after you now claim the injunction had expired? Like I said, the defendant's position, the defendants understood the relief entered to be a preliminary injunction and were proceeding as though, at some point, the district court was going to take additional, or was going to consider additional evidence and either enter a permanent injunction or acknowledge that the defendants were providing constitutional care and close the matter. Thank you. And so, for those reasons, we would ask that this court vacate the January, April, and May, as well as the November 2023 orders. Okay, thank you, counsel. Thank you to both counsel and the case will be taken under advisement.